IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LAEL SAMONTE, #A0078808 | ) | CIV. NO. 05-00598 SOM-BMK |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER GRANTING DEFENDANT'S |
| vs. | ) | MOTION FOR SUMMARY JUDGMENT |
| | ) | |
| ALBERTA MAGLINTI, JOHN DOES | ) | |
| 1-5, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Lael Samonte alleges that Defendants interfered with his legal mail between December 1990 and March 27, 2005, in violation of his constitutional rights.  Before the court is Defendant Alberta Cardus's[1] Motion for Summary Judgment ("Motion").  Samonte filed two Oppositions to the Motion, one on January 3, 2007, and another on January 11, 2007.  Defendant filed her Reply to Samonte's Oppositions on April 17, 2007.  The Motion was originally set to be heard on January 22, 2007, then continued until March 5, 2007, and then further continued until April 30, 2007, given Samonte's statements that he did not feel well.  At the hearing on July 2, 2007, Samonte again stated that he was unwell and agreed that the court could rule on the Motion without oral argument.  The court then took the Motion under advisement and here decides the Motion based on the parties' papers.  *See* Local Rule LR7.1(d).

---

[1]Cardus was formerly known as Alberta Maglinti.

Cardus is immune from suit for damages in her official capacity and is entitled to qualified immunity with respect to claims asserted against her in her individual capacity.  Cardus's Motion for Summary Judgment is GRANTED, and this action is terminated in its entirety.

## UNCONTROVERTED FACTS

Samonte filed this prisoner civil rights action on September 15, 2005, alleging that, between December 1990 and March 27, 2005, Cardus, a mailroom clerk at Halawa Correctional Facility ("HCF"), and other unnamed HCF mailroom clerks, John Does 1-5, "opened, censored, and interfered with" approximately thirty to thirty-five pieces of "legal" mail addressed to him, by inspecting this mail for contraband outside of his presence, in violation of unspecified constitutional rights.  (Doc. No. 1, Compl. 6-7.)  Samonte does not say whether the mail was incoming or outgoing, but names twenty-two attorneys or law offices, the Office of the Public Defender, the United States Department of Justice, the American Civil Liberties Union ("ACLU"), the Office of the Ombudsman, the Prison Legal News, and the Office of the Prosecuting Attorney as recipients or senders of this "legal" mail. (Doc. No. 1, Comp. 7-8, Doc. No. 51, January 3, 2007, Response 5.)

In support of his Complaint, Samonte attached copies of the front sides of four envelopes from law offices that were mailed

to him at HCF between June 18, 2004, and March 27, 2005.  These
envelopes were not marked as legal mail or as otherwise
privileged and confidential.  Each envelope was stamped
"Inspected" when Samonte received it.[2]  (Doc. No. 1, Compl., Ex.
1-4.)  Samonte has submitted no other allegedly improperly opened
envelopes or letters to support his contention that thirty or
more pieces of legal mail were opened over the fifteen-year
period at issue.

Cardus became an HCF Mailroom Clerk III on or about December
23, 2002.  (Doc. No. 46, Cardus Dec. ¶ 2.)  Cardus's duties
included processing outgoing and incoming mail for HCF staff and
inmates.  (*Id.*, Cardus Dec. ¶ 5.)  She was one of five HCF staff
members who processed inmate mail between December 23, 2002, and
March 2005, when Samonte was transferred from HCF.  (*Id.*,
Leatumauga Dec. ¶ 6.)  As part of this process, Cardus opened and
inspected certain outgoing and incoming inmate mail for the
presence of contraband, pursuant to Department of Public Safety
("DPS") regulations.  (*Id.,* ¶ 7; Espinas Dec. Ex. A, DPS Policy
No. Cor.15.02, eff. Dec. 15, 1992 (delineating processing and
procedures for inmate correspondence).))

DPS regulations require that incoming inmate legal mail be

---

[2]The return addresses on the four envelopes are: (1) Law
Offices of William Fenton Sink (Exs. 1 & 3); (2) Garcia Rosenberg
& McKay, Attorneys at Law (Ex. 2); and (3) Joseph A. Gomes,
Attorney at Law (Ex. 4).

marked as "Confidential" and contain a letterhead or official
envelope to prevent inspection of the mail outside of the
inmate's presence. (*Id.*, Leatumaga Dec. Ex. B.)  Mail from an
attorney that is meant to remain confidential must also include
the attorney's bar number. (*Id.*)  Mail so marked is considered
"privileged" and is only inspected for contraband in the inmate's
presence. (*See* Leatumauga Dec., Ex. A, 5/25/04 DPS Memo, ¶ 3;
Ex. B, 9/21/99 DPS Memo; Ex. C. HCF Facility Order No. 2.15.50
III(3); Ex. E, "Inmate Guidelines," ¶ 96; *see also* Espinas Dec.
Ex. B, DPS Policy No. Cor.15.02.4-.5 ("privileged mail shall be
subject only to inspection for contraband in the presence of the
inmate."))  To comply with these rules, and to insure that
correspondence from an attorney is treated as privileged and
confidential, an inmate's attorney of record must also submit a
letter to the prison's Branch Administrator on official
stationary stating that he or she will be corresponding with the
inmate. (*Id.,* Ex. C, V.1.)  This letter is kept on file by the
Mail Clerk. (*Id.*, VI.3.)  Mail that does not comply with these
restrictions is processed as regular mail and is subject to
inspection and possibly censored. (*Id.,* Ex. A ¶¶ 3-4.)

     If an inmate does not want his outgoing mail to be inspected
outside of his presence, the mail must also be clearly marked
"Privileged Mail-Confidential." (*Id.*, Ex. C, DPS Policy No.
2.15.02(e)(1).)  An inmate must submit to his or her case manager

the names and addresses of recipients of outgoing mail that the inmate wants processed as "privileged" and "confidential."  (*Id.*) The HCF Mail Clerk will maintain a list of these names and addresses so that the special processing procedures are followed.

The regulations concerning privileged/legal mail are disseminated to all inmates by memoranda posted in the prison's housing modules and are also found in the Inmate Guidelines Handbook, which is given to each inmate at the time their incarceration at the prison begins.  (*See id.*, Ex. B & E.)  It is undisputed that Samonte has been an HCF inmate since September 28, 1990.  (Doc. No. 58, Defs.' Reply, Andrade Dec.)  Although Samonte admits that the handbook was given to all inmates, he alleges that "some time in the 1990's it was taken away and never given back to the inmates."  (Doc. No. 51, Pl.'s Jan. 3, 2007, Response, 5.)  At least one memorandum was posted on September 21, 1999, in all residency and housing areas at the prison, including the Halawa Special Needs Facility ("HSNF"), where Samonte was then housed.  (Doc. No. 58, Defs.' Reply, Andrade Dec.)  That memorandum was updated, reiterated, and forwarded to all HCF Administration and staff on May 25, 2004. (*Id.*)  The May 25, 2004, memorandum was not disseminated to inmates and simply indicated that the prison's administrative rules, Title 17, Administrative Rules of the Corrections Division, were repealed and replaced by Title 23, Hawaii Administrative Rules, Department

of Public Safety. (Doc. No. 58, Defs.' Reply, Andrade Dec.)  The memorandum did not indicate that HCF's policy concerning legal mail had changed.  (*Id.*)

Cardus does not remember if she personally opened and inspected the mail represented by Samonte's Exhibits 1-4 or his other mail, but she admits that she would have done so pursuant to DPS rules and regulations if such mail was not properly marked or otherwise identified as "Confidential."  (Doc. No. 46, Cardus Dec. ¶¶ 14-16.)  Samonte provides nothing showing that, in fact, Cardus was the mailroom clerk who opened or inspected the mail at issue.

All Defendants are named in their official and individual capacities.  Samonte seeks compensatory and punitive damages.

### LEGAL STANDARD

Summary judgment shall be granted when

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56(c); *see also Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 891 (9th Cir. 2005); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

6

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323. In inmate cases, the courts must

> distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, --- U.S. ----, 126 S. Ct. 2572, 2576, 165 L. Ed.2d 697 (2006).

A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The moving party must identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp.*, 477 U.S. at 323).

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*

7

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).  The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." *Porter*, 419 F.3d at 891 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).  "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *California v. Campbell*, 319 F.3d 1161, 1166 (9th Cir. 2003); *Addisu*, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

## DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

I.  Defendants Are Immune from Suit for Damages in their Official Capacities.

Cardus argues that she, as a state employee, is immune from suit for damages in her official capacity.  The court agrees.

The Eleventh Amendment bars damages actions against state officials in their official capacities.  *See Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).  The Eleventh Amendment "bars suits against a state or its agencies,

regardless of the relief sought, unless the state unequivocally consents to a waiver of its immunity." *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005) (quoting *Yakama Indian Nation v. State of Wash. Dep't of Revenue,* 176 F.3d 1241, 1245 (9th Cir. 1999)); *see also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 267-68 (1997).  Unless a state unequivocally waives sovereign immunity or Congress has acted to override that immunity, the state, its agencies, and its officials are immune from suit.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989).

Moreover, state officials sued in their official capacity for damages are not "persons" for purposes of § 1983.  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n.24 (1997); *Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Will*, 491 U.S. at 71.

The State of Hawaii has not unequivocally waived its sovereign immunity in this case, nor is Cardus, or any of the other unnamed Defendants, a person within the meaning of § 1983 in their official capacities.  Summary judgment is granted as to all claims for damages against all Defendants in their official capacities.[3]

---

[3] Eleventh Amendment immunity does not bar *all* claims against state officials sued in their official capacities, and it does not bar claims against state officials sued in their individual capacities. State officials acting in their official capacities may be sued in federal court for prospective injunctive relief sought in connection with alleged violations of federal law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984); *Lawrence Livermore Nat'l Lab.*, 131 F.3d at
(continued...)

II.  Cardus Is Entitled to Summary Judgment for Alleged
     Violations Occurring Before December 23, 2002.

     Samonte alleges that approximately ten to fifteen pieces of

legal mail were inspected outside of his presence between

December 1990 and May 21, 2002, and that another fifteen to

twenty pieces of legal mail were opened outside of his presence

between May 22, 2002, and March 27, 2005.  (Compl. 6.)  It is

undisputed that Cardus did not become an HCF Mail Clerk until

December 23, 2002.  Cardus is therefore entitled to summary

judgment on all claims for alleged violations that occurred

before December 23, 2002.[4]

III. Defendants Are Entitled to Qualified Immunity.

     Samonte alleges that Cardus and the other unnamed Defendants

violated his rights by opening his legal mail outside of his

presence, including mail from (1) various attorneys; (2)the U.S.

Department of Justice; (3) the ACLU; (4) the Office of the

Ombudsman; (5) the Office of the Prosecuting Attorney; (6) the

Office of the Public Defender; and (7) various unnamed others.

_____

     [3](...continued)
839. Samonte is not seeking prospective injunctive relief, and,
because he has now been transferred from HCF, he would lack
standing to pursue any claims for such relief. *See Dilley v Gunn*,
64 F.3d 1365, 1368-69 (9th Cir. 1995)

     [4] Claims relating to mail allegedly opened more than two
years before Samonte filed this suit on September 15, 2005,
appear to be barred by the statute of limitation.  Defendant does
not address this issue, however, and the court makes no ruling on
it.

Samonte claims that this mail was "legal mail" that should have been accorded confidential privileged status and so allegedly required his presence before being opened.

Cardus argues that she is entitled to qualified immunity with respect to Samonte's claims. *Saucier v. Katz*, 533 U.S. 194 (2001), sets forth a two-step inquiry for determining whether qualified immunity applies. First, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged [must] show [that] the officer's conduct violated a constitutional right." *Id.* at 201. This prong of the *Saucier* inquiry "mirrors the substantive summary judgment decision on the merits." *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). "If no constitutional right would have been violated were the allegations established," the inquiry ends. *Saucier*, 533 U.S. at 201.

If there appears to have been a constitutional violation, however, the second step is to determine whether the right in question was "clearly established . . . in light of the specific context of the case, not as a broad general proposition." *Id.*; *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004). In essence, at the first step, the inquiry is whether the facts alleged constitute a violation of the plaintiff's rights. If they do, then, at the second step, the question is whether the defendant could nonetheless have reasonably but erroneously believed that

11

his or her conduct did not violate the plaintiff's rights. *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001).

    A.   <u>Samonte Does Not Establish a Constitutional Violation.</u>

    Samonte does not specify which constitutional right is implicated by his allegations.  Several constitutional rights conceivably could be at issue.  In *Wolff v. McDonnell*, 418 U.S. 539, 575-76 (1974), the Supreme Court considered a prisoner's claim against a state prison policy permitting the opening of incoming mail from an attorney by prison officials in the presence of the prisoner.  The Court doubted that such a policy infringed the prisoner's First, Sixth or Fourteenth Amendment rights, stating that "the constitutional status of the rights asserted, as applied in this situation, is far from clear."  *Id.; see also Royse v. Superior Court of the State of Washington in and for Walla Walla County*, 779 F.2d 573, 575 (9th Cir. 1986) ("Although the Court in *Wolff* suggested that an inmate's presence during inspection is adequate protection against prison officials reading his mail . . . it did not consider whether reading an inmate's mail despite his presence would violate his constitutional rights.").  *Wolff* upheld the constitutionality of the mail policy regardless of "which, if any, of the asserted rights are operative here."  *Id.* at 576-77.  It held that "by acceding to a rule whereby the inmate is present when mail from attorneys is inspected, [prison officials] have done all, and

12

perhaps even more, than the Constitution requires." *Id.*

Thus, although it is somewhat uncertain if Samonte even has a constitutionally protected right here, this court, as have most courts to address this issue, evaluates Samonte's claims as arising under the First Amendment.[5]  *See e.g.*, *O'Keefe v. Van Boening*, 82 F.3d 322, 324-26 (9th Cir. 1996) (focusing on a prisoner's First Amendment right to petition the government for redress of grievances); *see also Jones v. Brown*, 461 F.3d 353 (3rd Cir. 2006); *Kaufman v. McCaughtry*, 419 F.3d 678 (7th Cir. 2005); *Sallier v. Brooks*, 343 F.3d 868 (6th Cir. 2003); *Boswell v. Mayer*, 169 F.3d 384 (6th Cir. 1999).

Prisoners enjoy a First Amendment right to send and receive mail.  *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995) (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).  Nonetheless, prisons may adopt regulations or practices that impinge on a prisoner's First Amendment rights as long as the regulations are

---

[5] Although it is possible that Samonte is alleging a Sixth Amendment violation of his right to counsel, "[t]he Sixth Amendment right to counsel attaches only at the initiation of adversary criminal proceedings."  *Davis v. United States*, 512 U.S. 452, 456-57 (1994); *Wolf*, 418 U.S. at 576 (the Sixth Amendment's reach "is only to protect the attorney-client relationship from intrusion in the criminal setting.").  Samonte makes no claims, and provides no evidence, that any of the letters allegedly interfered with were from his criminal defense attorney.

Nor does it appear that Samonte is making a First Amendment access to the court claim.  He has, in any event, alleged no actual injury to any real or contemplated action. *See Lewis v. Casey,* 518 U.S. 343, 351 (1996).

"reasonably related to legitimate penological interests."  *Turner v. Safley*, 482 U.S. 78, 89 (1987) (upholding a prison mail policy prohibiting inmate-to-inmate correspondence).  The *Turner* standard applies to regulations and practices concerning all correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners.[6] *Thornburgh*, 490 U.S. at 413.

It is settled that prison officials may inspect *non-legal* mail for contraband without violating a prisoner's constitutional rights.  *Witherow*, 52 F.3d at 265-66 (upholding inspection of outgoing mail); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) (upholding inspection of incoming mail); *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986) (upholding inspection of outgoing and incoming mail).

Samonte alleges that he received mail from the ACLU, the Prison Legal News, the Office of the Ombudsman, the Office of the

---

[6] Four factors are considered in determining the reasonableness of a prison regulation: (1) whether there is a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "'exaggerated response' to prison concerns."  *Turner*, 482 U.S. at 89-90 (citations omitted).

Prosecuting Attorney, and the U.S. Department of Justice.[7]  Mail from public agencies, public officials, the ACLU (assuming that the ACLU is not acting as counsel), and the news media is not considered legal mail, and may be opened outside of an inmate's presence.  *See Mann v. Adams*, 846 F.2d 589, 590-91 (9th Cir. 1988) (*per curiam*); *see also Keenan v. Hall*, 83 F.3d 1083, 1094 (9th Cir. 1996) (concluding that mail from the courts, as contrasted to mail from a prisoner's lawyer, is not legal mail), *amended by* 135 F.3d 1318 (9th Cir. 1998).

Moreover, mail from the Prosecuting Attorney, by definition Samonte's opposing counsel, rather than mail from his own attorney is not "legal mail." *See Keenan*, 83 F.3d at 1094.  There is no confidential relationship between a litigant and the opposing attorney, unlike the confidential attorney-client relationship that exists between a litigant and his own attorney. Processing mail from opposing counsel, or, as alleged here, from the Prosecutor, as regular mail instead of as legal mail did not violate Samonte's constitutional rights.  Claims relating to these pieces of mail are dismissed with prejudice.

Legal mail, however, must be treated more cautiously, because opening and inspecting legal mail outside the presence of the prisoner may have an impermissible chilling effect on the

---

[7] Samonte provides no evidence that he did, in fact, actually receive mail from any of these agencies.

constitutional right to petition the government. *O'Keefe v. Van Boening*, 82 F.3d 322, 327 (9th Cir. 1996) (citing *Lair v. Taum*, 408 U.S. 1, 11 (1972)). Inspecting legal mail, that is, mail to or from an inmate's attorney, may also infringe on the confidential attorney-client privilege. *Keenan*, 83 F.3d at 1094.

Prison officials may, however, institute procedures for inspecting clearly marked legal mail. *Wolff*, 418 U.S. at 576-77. For instance, prison officials may open an inmate's legal mail in his presence for visual inspection for contraband. *Id.* (stating that such a rule provides as much and "*perhaps even more*, than the Constitution requires") (emphasis added); *Sherman v. MacDougall*, 656 F.2d 527, 528 (9th Cir. 1981). As the Court observed, "freedom from censorship is not equivalent to freedom from inspection or perusal." *Wolff*, 418 U.S. at 576; *see also Royse v. Superior Court*, 779 F.2d 573 (9th Cir. 1986) (holding that legal mail may be inspected for contraband).

The issue of whether prison officials may also open and visually inspect unmarked mail from all attorneys, whether representing the prisoner or not, *outside* the presence of the prisoner is, however, an open question within the Ninth Circuit. *See Keenan*, 83 F.3d at 1094 ("[W]e do not decide whether mail clearly sent from a lawyer to an inmate but lacking the "Legal Mail" designation may be opened outside the presence of the inmate."); *Sherman*, 656 F.2d at 528 (declining to rule on the

16

issue).  Nor has the Supreme Court addressed the constitutionality of a regulation permitting, outside of a prisoner's presence, the opening and inspection of mail from attorneys or other legal agencies if that mail has not been specially marked.

The issue at bar is not whether HCF officials had the right to open and inspect Samonte's regular or legal mail for contraband.  They certainly retain such a right.  The issue is whether they can open mail from various law offices that is not specifically marked as "legal" mail, or confidential, or did not otherwise comply with HCF's rules governing the handling of confidential inmate mail.  This court concludes that they can.

As stated in *Wolff*:

> We think it entirely appropriate that the State require any such [legal] communications to be *specially marked* as originating from an attorney, with his name and address being given, if they are to receive special treatment. It would also certainly be permissible that prison authorities require that a lawyer desiring to correspond with a prisoner, *first identify himself and his client to the prison officials,* to assure that the letters marked privileged are actually from members of the bar*.*

*Wolff,* 418 U.S. at 576-77 (emphasis added).

Relying on *Wolff*, courts have held that prisons may institute regulations concerning inmate legal mail.  These rules include requiring that legal mail be clearly marked as privileged.  *See Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir.

17

1992) (holding that an opt-in system in which prison officials could open any mail sent to a prisoner unless the prisoner affirmatively requested that "privileged mail," defined by the policy as mail sent by a court or by counsel, be opened in his presence, was constitutional); *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) (upholding a policy requiring inmates to request that "legal mail" be opened in their presence); *Phelps v. U.S. Federal Government*, 15 F.3d 735, 740 (8th Cir. 1994) (holding that mail from a law firm that is not marked private or confidential need not be given the protections of "legal mail").

Another common requirement is that legal mail be clearly identified as coming from the inmate's attorney. *See Wolff,* 418 U.S. at 576-77; *Jensen v. Klecker*, 648 F.2d 1179, 1182 (8th Cir. 1981) ("Privileged prisoner mail, that is mail to or from an inmate's attorney *and identified as such*, may not be opened for inspections for contraband except in the presence of the prisoner." (emphasis added)).

Similarly, the federal Bureau of Prisons' regulations governing the processing of inmate mail, 28 C.F.R. § 540.14 et seq., allow an inmate's incoming correspondence to be opened, read, and copied outside the presence of the inmate unless "the sender is adequately identified on the envelope, and the front of the envelope is marked 'Special Mail--Open only in the presence of the inmate.'" 28 C.F.R. § 540.18(a). If the envelope is so

18

marked, it may be opened only in the presence of the inmate and may not be read by prison officials.  *Id.*  Federal inmates are responsible for advising their lawyers that correspondence will be handled as "special mail" only if the envelope is marked with the attorney's name and an indication that the person is an attorney, and if the front of the envelope is marked "Special Mail--Open only in the presence of the inmate."  28 C.F.R. § 540.19(b).

The record here shows that HCF implemented specific policies and procedures to protect an inmate's confidential communications to or from his attorney or other legal entities.  To ensure that such mail is inspected for contraband in the inmate's presence, there must be some indicia that the mail is, indeed, confidential.  The mail must be marked "Confidential" and must have an official letterhead or envelope.  If the mail is from an attorney, it must also show the specific attorney's name, signature, and bar number, and the attorney must have first officially identified himself to the prison as representing the prisoner or intending to confidentially correspond with the prisoner.  These regulations are reasonably related to the legitimate governmental interest of maintaining institutional security by preventing contraband from entering the prison, while still protecting an inmate's right to communicate in confidence with his attorney and others.  *See Wolff*, 418 U.S. at 576-77.

19

Samonte does not allege that any of the mail in question is from an attorney who is or was representing him, thus providing some justification for a finding that the alleged mail was, in fact, legal mail, despite the lack of "confidential" markings on the envelopes.  "The fact that a person is a lawyer does not make all communications with that person privileged."  *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002)(citing *United States v. Chen*, 99 F.3d 1495, 1501 (9th Cir. 1996)).

Nor does Samonte provide direct evidence of the contents of any of the letters, or even of the existence of letters other than those that were presumably in the four envelopes attached to the Complaint.  These four envelopes are the only evidence before the court that the ten to fifteen alleged pieces of mail remaining at issue even existed.[8]  Because Samonte does not offer the correspondence itself, describe the contents of this mail, or explain his relationship to any of the named attorneys who are not represented on the four envelopes in any manner sufficient to allow the court to conclude that the mail was privileged, he does not meet his burden of showing that a trier of fact could characterize the missing pieces of mail at issue as legal.

---

[8] In his January 3, 2007, Response, Samonte states that he attached "envelopes from three different attorney[]s and from Prison Legal News that [were] inspected and censored . . . outside of Plaintiff's presence marked as exhibits 'B', 'C', and 'D'."  (Doc. No. 51, 5.) He did not, however, attach those documents to that filing, and has provided only Exhibits A, F, and G, none of which is evidence of legal mail.

Nothing on the envelopes that he does produce indicates that they contained confidential, personal, or privileged material. None indicates that it was sent from any specific attorney at the law office on the return address.  The envelopes are not marked confidential, do not contain the name, signature, or bar number of the attorneys sending the mail, and could therefore have been sent by anyone from the respective law offices.  Thus, these envelopes gave no indication to prison authorities that they were to be opened only in Samonte's presence.

Samonte also fails to show that any attorney, either those whose law offices are represented on the four envelopes or those named in the Complaint, had notified the prison at any time that they were representing Samonte in a legal proceeding or were otherwise corresponding with him, and that mail from them should be treated as confidential.  Likewise, Samonte provides nothing, not even his own assertion, stating that he ever formally requested that letters from these attorneys be treated as confidential mail to be opened only in his presence.

Nor does Samonte present evidence showing that the material within these envelopes related to a pending, or even long-finished, legal matter between him and an attorney.  The court, of course, understands that it may be difficult for Samonte to produce many of the letters that were in these envelopes, considering that his allegations begin with events occurring

21

seventeen years ago, and taking into account his two transfers since he left HCF.  Samonte, however, gives no explanation as to why he is able to produce four envelopes of his most recent letters, but does not produce the letters themselves, which might establish whether the contents were, in fact, legal mail and intended to be confidential.

As the Sixth Circuit Court of Appeals stated in a case that Samonte cites in support of his argument, "Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights.  Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and [to] other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney." *Sallier*, 343 F.3d at 874.  Samonte has failed to show that the mail in question was, in fact, legal mail, entitled to the confidentiality and protection that HCF affords such mail.

In his Responses to the Motion, filed on January 3 and 11, 2007, Samonte argues that he never received the prison's May 25, 2004, memorandum regarding legal mail because he was being greatly restricted at HCF Special Holding between May 22, 2002, and March 28, 2005.  He implies that the memorandum cannot, therefore, apply to him and his mail.  But this memorandum did not implement a new legal mail policy.  It was not distributed to

22

the inmates, as it was intended for HCF administrators and staff only.  This memorandum merely restated information given to all inmates in a September 21, 1999, memorandum.  The September 21, 1999, memorandum was posted in all residency and housing areas at HCF, including the HSNF where Samonte was housed between July 1999 and December 1999.  (Defs.' Reply, Andrade Dec. 8.)  Samonte therefore had access to this publicly posted policy.

Moreover, these memoranda reiterated information in the HCF Inmate Guidelines given to all inmates at orientation, upon their arrival at the prison. (Mot. 13 n.5., Leatumauga Dec., Ex. A, and Reply, Andrade Dec. 8.)  Samonte admits that he was given a copy of the Inmate Guidelines when he came to HCF, although he alleges that it was later taken from the inmates and not returned. Samonte also went through new inmate orientation, at which he was orally informed about the prison's mail policies.  (Reply, Andrade Dec. ¶ C.)

Samonte also asserts in his Complaint that he filed grievances concerning each piece of mail that he alleges was interfered with by prison staff.  (*See* Comp. 6 ¶ 5, & 8 ¶ 6.) Defendants provide a copy of one of these grievances, number 102463, dated December 18, 2003.  The resolution of this grievance, dated December 31, 2003, informed Samonte that privileged/legal mail had to comply with the procedures set forth in the September 21, 1999, memorandum, a copy of which was

23

attached to the resolution.   (Reply, Leatumauga Dec., Ex. 1.)
Samonte was therefore aware of the policy no later than the end
of 2003, which is well before the dates reflected on the four
envelopes Samonte provides.

Defendants also provide a copy of an envelope that Acting
Warden Clayton Frank received from Samonte on May 4, 2003.   That
envelope is addressed by Samonte and clearly shows "Privilege
Mail," written twice on its front.   (Reply, Frank Dec., Ex. 2.)
Samonte was therefore not only aware of the policy but he was
actively complying with it in May 2003.   The court again notes
that: (1) Cardus became a mailroom clerk on December 23, 2002;
and (2) Samonte only provides evidence of four pieces of
allegedly illegally opened mail, all dated 2004 or 2005.

"When the moving party has carried its burden under Rule
56(c), its opponent must do more than simply show that there is
some metaphysical doubt as to the material facts." *Matsushita*,
475 U.S. at 586.   "[I]f the factual context makes the non-moving
party's claim implausible, that party must come forward with more
persuasive evidence than would otherwise be necessary to show
that there is a genuine issue for trial." *California
Architectual Bldg. Products v. Franciscan Ceramics, Inc.*, 818
F.2d 1466, 1468 (9th Cir. 1987).

Samonte does not come forward with the required showing.
First, his allegation that he was unaware of the May 25, 2004,

legal mail memorandum is of no import as that memorandum was never intended for inmates, and merely restated information from the September 21, 1999, memorandum that was publicly posted for all inmates.  Second, Samonte was given the HCF Inmate Guidelines and was complying with its requirements no later than May 2003. He was given another copy of the inmate guidelines pertaining to legal mail with the December 31, 2003, resolution of his grievance.  Third, Samonte's allegation that he was nonetheless unaware of the prison's legal/confidential mail policies is implausible.  Samonte was orally informed of the prison's mail policies at inmate orientation, received them in writing in the HCF Inmate Guidelines, was or should have been aware of the September 21, 1999, publicly posted memorandum, and was also informed of these policies in response to his grievances.

Cardus has shown the absence of a triable issue of fact on Samonte's claims that she, or other HCF officials, violated Samonte's constitutional rights by opening his mail.  Even viewing the evidence and the inferences drawn therefrom in the light most favorable to Samonte, this court concludes that summary judgment is warranted in Defendants' favor.

## CONCLUSION

1.   All Defendants are immune from suit for damages in their official capacities, and summary judgment is GRANTED as to claims against them in their official capacities.

2.   Cardus is GRANTED summary judgment as to all claims for violations arising before December 23, 2002.

3.   Samonte has failed to show that there is a triable issue of fact as to the remaining claims.  As Cardus and the unnamed John Doe Defendants are entitled to qualified immunity with respect to all claims against them in their individual capacities, summary judgment is GRANTED.  The Clerk is DIRECTED to enter judgment in favor of Defendants and to close the file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 3, 2007.


_____
Susan Oki Mollway
United States District Judge


SAMONTE v. MAGLINTI, et al., CV 05-00598 HG/KSC; ORDER GRANTING DEFENDANT ALBERTA MAGLINTI'S MOTION FOR SUMMARY JUDGMENT; dmp\ Orders 07\Samonte 05-598 (MSJ)